770 So.2d 466 (2000)
STATE of Louisiana
v.
Larry EVERETT.
No. 99-KA-1963.
Court of Appeal of Louisiana, Fourth Circuit.
September 27, 2000.
*468 Harry F. Connick, District Attorney, Nicole Barron, Assistant District Attorney, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
Robert S. Glass, Glass & Reed; Yvonne Chalker, Louisiana Appellate Project, New Orleans, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge WILLIAM H. BYRNES, III, Judge MICHAEL E. KIRBY, Judge PATRICK M. SCHOTT, Pro Tem.
KIRBY, J.

STATEMENT OF CASE
On October 6, 1998, the defendant was charged by bill of information with one count of aggravated battery in violation of La. R.S. 14:34. He pled not guilty at arraignment on October 13, 1998. On March 10, 1999, a six-person jury found the defendant guilty as charged, and on May 17, 1999, the court sentenced the defendant to serve ten years at hard labor, with credit for time served. The defendant's motion to reconsider the sentence was denied.
Following sentencing, the State filed a multiple bill charging the defendant with being a third felony offender. The defendant orally pled not guilty to the multiple bill. Following a multiple bill hearing on May 27, 1999, the defendant was found to be a third felony offender and sentenced to life imprisonment at hard labor in the custody of the Department of Corrections, without benefit of probation, parole or suspension of sentence. His oral motion to reconsider the sentence was denied; his oral motion for appeal was granted.

STATEMENT OF FACT
On September 5, 1998, the defendant visited a Sav-A-Center store in the Algiers section of New Orleans. The victim, Mr. Louis Cancienne, was the manager on duty that day. While the victim was talking to Gerald Westberry, another manager, the defendant approached and asked for directions to an item in the store. Mr. Westberry directed the defendant to the item and then returned to continue his conversation with the victim. While the two men were talking, the defendant approached again and told the victim thankyou. At that time, the victim noticed that the defendant was pushing a basket containing leaflets at the bottom. Hidden beneath the leaflets were several items. Thinking the defendant might be attempting to steal something, the victim went to the front of the store. The victim observed that the defendant, who was carrying two half-gallon bottles of liquor for which he had not paid, was attempting to walk out the automatic entrance doors. In an effort to reach the outside before the defendant, the victim hurriedly exited the building through the exit doors. However, someone approached from the outside triggering the automatic entrance doors, thus allowing the defendant to exit the building ahead of the victim.
The victim testified that he approached the defendant and ordered him to put the bottles down. Instead of complying with the victim's directives, the defendant raised a bottle as if to threaten the victim. The defendant then started to walk off. The victim again told the defendant to put the bottles down. Again the defendant raised the bottle and then attempted to run away. The victim grabbed the defendant's shoulders from behind and tried to stop him. The defendant swung a bottle backhanded at the victim, but the victim ducked. The victim grabbed the defendant's hand and pushed the defendant against a nearby post. The defendant swung a bottle at the victim, but it broke on the post. The defendant freed his arm *469 and swung the second bottle overhand at the victim striking the victim in the face. The victim was taken to the hospital where he received between twenty-five to thirty stitches to the outside of his face and fifteen to twenty stitches on the inside of his face.
Both the defendant and the victim sustained severe cuts because of the incident. The victim denied having any idea of how the defendant's face was cut in the incident. The victim admitted that when he saw the defendant in the hospital later, he told the defendant, "You're gonna pay."
That night, Sergeant Joseph Hebert of the New Orleans Police Department was working a paid detail at the store. At approximately 9:30 p.m. he noticed a bloody subject, later determined to be the defendant, running across the parking lot. The defendant attempted to enter a gray Dodge van, but the people inside the van would not open the doors. The defendant then ran towards General DeGaulle Avenue with the officer in pursuit. Sergeant Hebert was able to momentarily detain the subject, but the defendant escaped when a car approached at a high rate of speed and distracted the officer. Several New Orleans Police Department officers from the Fourth District later apprehended the defendant. When apprehended, the defendant had serious injuries and needed immediate medical attention.
The defendant testified on his own behalf. He stated that on the night in question he attended a card party in Algiers. Several of the people attending the party asked if he would go to the Sav-A-Center to purchase some grocery items. More specifically, he was given money to purchase some beer, some dough to make homemade pizza, and a half-gallon of liquor. The partygoers gave the defendant approximately thirty-six dollars to pay for the items, and one girl's boyfriend gave him a ride to the Sav-a-Center in his van. While in the store the defendant approached a person dressed in khaki pants and asked about the location of the pizza dough. After locating the pizza dough, the defendant decided to leave the store without paying for the two bottles of liquor. As he approached the entrance to the store, a customer was entering the store. The defendant grabbed the liquor bottles and headed out the door. The victim came running towards him as he was running out the automatic doors. The defendant testified that when he observed the victim rapidly approaching him, he decided to surrender; however, the victim threw the defendant into the wall. According to the defendant, "the bottle must have hit the wall." The defendant recalled seeing blood coming out of his face. However, the defendant testified that he did not know if he dropped the other bottle because he could not remember what happened from that moment. He merely recalled fleeing the scene. The defendant testified that he received stitches because of the cuts on his hand "from the bottle when the glass broke." He denied swinging the bottle at the victim, and he claimed he did not realize how he received his injuries until he arrived at Charity Hospital.
While testifying at length that he ran from the scene because he was frightened for his freedom, the defendant denied running from the uniformed police in the parking lot who allegedly tried to stop him. He testified that he approached a van that he thought was the one that he had arrived in, but nobody was in the van. He kept running and eventually stopped and was seated on a curb when several officers approached him. While admitting to stealing the liquor, the defendant denied ever intending to hit the victim. He maintained that he was only trying to escape, and the victim was the aggressor in the incident.
The defendant rationalized his decision to steal the liquor by stating that he was not employed at the time, and he was just trying to keep a few dollars in his pocket. He stated that he had no intentions of shoplifting when he entered the store. According to the defendant his mind, "just *470 snapped." It appeared that he would be able to get away with stealing the liquor, and for that reason he "took a chance."
The defendant admitted having several convictions. He stated that he was convicted of simple robbery when he was eighteen years old. He also testified that he had two shoplifting convictions, and a conviction for being a felon in possession of a weapon.

ASSIGNMENT OF ERROR NUMBER 1
In the first assignment of error the defendant argues that the evidence was insufficient to convict him of aggravated battery.
In assessing the sufficiency of evidence to support a conviction, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 309, 99 S.Ct. 2781, 2784, 61 L.Ed.2d 560 (1979); State v. Rose, 607 So.2d 974, 978-979 (La.App. 4th Cir.1992), writ denied, 612 So.2d 97 (La. 1993). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution; it must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall, id.
The defendant was convicted of aggravated battery, which is defined as a battery committed with a dangerous weapon. La. R.S. 14:34. In the bill of information, it was alleged that the defendant committed the aggravated battery with a glass bottle. The victim testified that the defendant struck him in the face with a liquor bottle. The testimony of the victim alone is sufficient to establish the elements of the offense. State v. Ingram, 29,172, p. 10 (La.App. 2 Cir. 1/24/97), 688 So.2d 657, 664, writ denied, 97-0566 (La.9/5/97), 700 So.2d 505. However, where a witness's testimony is rife with internal contradiction and irreconcilable conflict with the physical evident, that testimony will not be sufficient to support a factual conclusion. State v. Dunn, 30,560 (La.App. 2 cir. 2/25/98), 709 So.2d 852.
The defendant argues that the testimony of Mr. Cancienne, the victim, was rife with internal contradiction and irreconcilable conflict with the physical evidence. For that reason, he argues the evidence was insufficient to support his conviction for aggravated battery.
First, the defendant argues that the victim's testimony describing how he was hit with the liquor bottle was inconsistent. He argues that on direct examination the victim testified that the defendant swung the liquor bottle overhand and struck him. However, later on cross-examination, the victim admitted that he did not know how the defendant swung the bottle because when he saw the bottle being held back, he started to turn away. It is somewhat puzzling that the defendant, who candidly admitted that he did not know how he was cut, would questions the victim's testimony simply because the victim could not say how the defendant swung the bottle that cut him in the face.
The mere fact that the victim was unable to state how the bottle was swung is irrelevant. The victim testified that there was no doubt in his mind that the defendant hit him in the face with a full bottle of George Dickle liquor. He stated that when he attempted to pull away from the defendant during the struggle that ensued when he accosted the defendant, he saw the bottle out of the corner of his eye, and *471 there was nothing he could do to avoid the bottle. This testimony was sufficient to allow the jury to conclude that the defendant hit the victim with the bottle.
Next, the defendant emphasizes that he was severely cut by the broken bottle during the confrontation. Yet, the victim was unable to explain how the defendant was injured. He argues that the reason for this lack of knowledge stems from the fact that the victim was vindictive and biased. To support this contention, the defendant emphasizes that the victim told him that he would pay for what he had done when the two men saw each other at the hospital the night of the incident. Given these facts, the defendant argues that his own account of the incident "seems more plausible" than the victim's account.
As stated earlier, the defendant admitted that he did not know for sure how he received his own injuries. Consequently, it is difficult to understand how he believes this same lack of knowledge on the part of the victim is indicative of vindictiveness or bias. This argument has no merit.
Finally, the defendant argues that the victim was the aggressor. He argues that he was only trying to defend himself from an irate manager. He insists that he was only trying to steal bottles of liquor and that he had determined in his mind to surrender once he saw the victim coming toward him. This argument is not supported by the testimony. Following the confrontation with the victim, the defendant testified that he could not recall what happened. Yet he recalled the details that occurred when he ran away. Further, while he admitted receiving stitches on his hand from the bottle when the glass broke, he offered no explanation as to how he received the cuts on his hand.
A review of the testimony offered at trial supports a finding that the defendant's testimony was rife with inconsistencies and contrasted significantly with the testimony given by the victim. The victim testified that the defendant raised a bottle in a threatening manner as he initially approached him. Further, the victim testified that the defendant swung at him with a bottle several times. However, the defendant expressly denied swinging a bottle at the victim.
The victim forthrightly testified that he followed the shoplifting defendant out of the store and attempted to stop him from leaving with the unpaid for liquor. The defendant struck him with one of the stolen liquor bottles, causing serious damage to the victim's face, which required nearly thirty stitches to begin to repair. The. jury for obvious reasons did not believe the defendant's testimony that he was merely shoplifting, and that the victim was injured while the defendant was trying to defend himself against the wrath of the victim.
The defendant's argument that his version of the incident is "more plausible" than the victim's version is nothing more than an argument alleging that he was a more credible witness. It is not the function of the appellate court to reassess the credibility of witnesses or to reweigh the evidence; the reviewing court's function is to determine the constitutional sufficiency of the evidence presented. State v. Johnson, 619 So.2d 1102, 1109 (La.App. 4 Cir. 5/13/93), writ denied, 625 So.2d 173 (La.10/1/93). Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the fact finder. State v. Brumfield, 93-2404 (La.App. 4th Cir.1994), 639 So.2d 312; State v. Garner, 621 So.2d 1203 (La. App. 4th Cir.1993), writ denied 627 So.2d 661 (La.1993). Moreover, conflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency. State v. Jones, 537 So.2d 1244, 1249 (La. App. 4 Cir.1989); Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. Id. A trier of fact's determination as to the credibility of a witness is a *472 question of fact entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984).
Clearly, the jury had an adequate basis for deciding the credibility issue against the defendant. This assignment of error has no merit.

ASSIGNMENTS OF ERROR NUMBERS 2 AND 4
In these two assignments of error the defendant challenges the sufficiency of the State's evidence to support the adjudication that he was a third felony offender. In the second assignment of error the defendant argues that the trial court erred in adjudicating him a multiple offender because 1) the State failed to introduce sufficient evidence to prove identity; and 2) the state failed to introduce sufficient evidence to establish the validity of his two prior guilty pleas. In the fourth assignment of error, the defendant challenges the use of a ten-year cleansing period for a 1984 conviction to adjudicate him a third felony offender.

Identity
In a multiple offender proceeding, the State must establish the prior felony and that the defendant was the same person convicted of that felony. State v. Henry, 96-1280 p. 7 (La.App. 4 Cir. 3/11/98), 709 So.2d 322; writ denied, State ex rel. Henry v. State, 99-2642 (La.3/24/00), 758 So.2d 143 State v. Neville, 96-0137 (La.App. 4th Cir.5/21/97), 695 So.2d 534, writ denied 97-1637 (La.12/12/97), 704 So.2d 1180.
In State v. Henry, 96-1280 p. 7, 709 So.2d at 325, this court discussed the various methods available for the State to meet its burden of establishing identity in a multiple offender proceeding:
Various methods are available to prove that the defendant on trial is the same person convicted of the prior felony offense, such as by testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared with those of the person previously convicted, by photographs contained in a duly authenticated record, or by evidence of identical driver's license number, sex, race and date of birth. State v. Westbrook, 392 So.2d 1043 (La.1980); State v. Curtis, 338 So.2d 662 (La.1976); State v. Pitre, 532 So.2d 424 (La.App. 1st Cir. 1988), writ den. 538 So.2d 590(La.1989); State v. Savoy, 487 So.2d 485 (La.App. 3rd Cir.1986). The mere fact that the defendant on trial and the person previously convicted have the same name does not constitute sufficient evidence of identity. Curtis, 338 So.2d at 664. In State v. Westbrook, 392 So.2d 1043 (1980), the supreme court found that along with defendant's name, his driver's license number, sex, race, and date of birth were sufficient evidence for the State to carry its burden of proving that this defendant was the same person previously convicted of another felony.
In the instant case, the multiple bill of information was based on the defendant's 1999 conviction for the instant aggravated battery conviction (case # 402-100), a 1993 felony theft conviction (case # 361-273), and a 1984 possession of gun by a convicted felon conviction (case # 299-642). At the multiple bill hearing of May 27, 1999, Officer Glen Burmaster, an expert in fingerprint identification, testified that the fingerprints of the defendant taken in court that day matched those found on certified copies of arrest registers dated January 1, 1993 and December 13, 1983. However, the fingerprints on the bill of information packet for the 1993 felony theft charge were not suitable for identification, and no fingerprints were found on the bill of information for the 1983 possession of a gun by a felon charge. Accordingly, Officer Burmaster admitted that he could not link the fingerprints found on the arrest register to the bill of information packets for the 1984 possession of a gun by a felon and the 1993 felony theft conviction.
*473 Because Officer Burmaster could not link the fingerprints found on the arrest register with a set of prints on either of the bills of information, the defendant argues the evidence was not sufficient to prove identity. However, as noted in Henry, various methods may be used to prove identity. In Henry, the State was unable to produce the fingerprints for one of the predicate offenses listed in the multiple bill. However, the State showed the person convicted of the prior offense had the same Bureau of Identification number, the same date of birth, and the same social security number as the defendant. This Court found this proof was sufficient to prove the defendant's identity as the person convicted in the prior offense. Similarly, in State v. Bell, 97-1134 (La.App. 5th Cir.2/25/98), 709 So.2d 921, writ denied, 98-0792 (La.9/16/98), 721 So.2d 477, the appellate court held that testimony comparing a defendant's current fingerprints with fingerprints found on prior arrest records was sufficient to prove that the defendant was the person convicted of the prior offenses.
In State v. Davis, 98-0731, p. 9 (La. App. 4th Cir.10/20/99), 745 So.2d 136, writ denied, XXXX-XXXX (La.5/12/00), 762 So.2d 11,[1] this court found the State sufficiently proved identity as to prior convictions through the use of fingerprints on an arrest register, the information from which matched information contained in certified copies of the prior conviction.
With respect to the defendant's prior conviction in case # 299-642, the State introduced a bill of information, a copy of the docket master, a waiver of rights/guilty plea form signed February 13, 1984; a detailed minute entry for that date; and an arrest register dated December 13, 1983. The bill of information for case # 299-642 was filed on January 12, 1984. The bill charged that the defendant, Larry Everett unlawfully possessed a firearm, to-wit: a .38 caliber Titan Revolver on December 13, 1983. The address given for the defendant on the bill of information is 2822 Willow # B. This is the exact same address given for the defendant on the arrest register evidencing his arrest for the illegal possession of a weapon by a felon on December 13, 1983. Additionally, the minute entry for case # 299-642 noted that the defendant's Bureau of Identification number is 208317; his date of birth is February 12, 1960; and he was born in New Orleans, Louisiana. This identifying information corresponds exactly with the information given for the defendant on the arrest record of December 13, 1983, and Officer Burmaster testified that the defendant's prints taken earlier that day matched those on the arrest register.[2] Notwithstanding the lack of fingerprints on the bill of information, we find the State proved the defendant's identity as the same person who pled guilty in 1984 to being a felon in possession of a firearm on December 13, 1983.
Similarly, it appears the evidence is sufficient to identify the defendant as the same individual charged in case # 361-273. With respect to case # 361-273, the State introduced a bill of information, a waiver of rights/guilty plea form signed May 24, 1993; a detailed minute entry for that date; and an arrest register dated January 1, 1993. The bill of information filed January 26, 1993 charged that the defendant and Troy K. Washington committed the felony theft of a wallet and its contents on January 1, 1993. The address given for the defendant, Larry Everett, on the bill of information is the same as the address given for the defendant on the arrest register of January 1, 1993, i.e., 2822 Willow Street, Apt. B. Moreover, the minute entry for case # 361-273 notes that the defendant was born in New Orleans, La. on February 12, 1960. This identifying information *474 is identical to identifying information contained on the arrest register of January 1, 1993. As with the 1984 case, the fingerprint expert testified that the defendant's prints matched those on the N.O.P.D. copy of the arrest record, which was the same as the one included in the court records for the 1993 conviction. Significantly the name and address of the accused listed on the bills of information for the 1984 and 1993 bills of information are identical to the name and address of the arrestee. Further, the date of birth, social security number, and other identifying information is the same on both arrest registers. Based upon the totality of the evidence the evidence was sufficient to establish the defendant's identity. State v. Henry, 96-1280 (La.App. 4 Cir. 3/11/98), 709 So.2d 322.

Validity of the 1993 guilty plea
It does not appear that the defendant preserved the issue of the validity of the 1993 guilty plea for appellate review. A review of the record reveals that the defendant failed to file a written response to the multiple bill of information complaining of any irregularities. In State v. Cossee, 95-2218 (La.App. 4 Cir. 7/24/96), 678 So.2d 72, this Court held that the failure to file a written response to the multiple bill as required by La. R.S. 15:529.1(D)(1)(b) precluded appellate review of a defendant's claim that documentary evidence was not sufficient to support the prior convictions set forth in the multiple bill.
This court has held that a defendant's oral objection may be sufficient to preserve the issue of sufficiency of the evidence to prove the validity of a conviction for appellate review. See State v. Anderson, 97-2587 (La.App. 4 Cir. 11/18/98), 728 So.2d 14 and State v. Lorio, 94-2591 (La.App. 4 Cir. 9/28/95), 662 So.2d 128.
At the multiple bill hearing, counsel for the defendant questioned the adequacy of the testimony and documents to prove identity, and counsel expressly argued that the 1984 conviction could not be used as a predicate. Thus, it appears that the defendant placed the court on notice that he was challenging the validity of the 1984 conviction. However, counsel voiced no objections to the validity of the 1993 conviction. Nor did he produce any affirmative evidence to indicate that he was not properly Boykinized at the time that the plea was accepted. Therefore, the validity of the 1993 conviction has not been preserved for appellate review.

Validity of the 1984 guilty plea
The State introduced the waiver of rights-plea of guilty form for the defendant's February 13, 1984 conviction, as well as the minute entry memorializing the guilty plea. The waiver form has a space for initials next to each sentence, and the form contains the defendant's initials in each space. The defendant, his defense attorney, and the trial judge signed the waiver of rights form. The signed waiver of rights form contains the sentencing range for possession of a firearm by a convicted felon, as well as the exact sentence (three years in the custody of DOC) the judge would be imposing on the defendant. The waiver of rights form also lists all three of the Boykin rights.[3] The minute entry for case # 299-642 is dated February 13, 1984. The minute entry states that the defendant was represented by counsel from the Loyola Law Clinic and that he changed his plea of not guilty to guilty. The minute entry reflects that the defendant was interrogated regarding his knowledge of his constitutional rights as provided on the waiver of rights form, and the defendant was found to be competent. The court found the pleas was voluntarily made.
The defendant does not challenge the adequacy of the guilty plea rights waiver form executed on February 13, 1984. *475 However, the defendant argues that the minute entry of February 13, 1984 did not specifically show that he was advised of and waived his right to trial, his right to confront his accusers, and his right against self-incrimination. Thus, in the absence of a transcript, he argues the State failed to prove the validity of the 1984 guilty plea. This argument has no merit.
Although the colloquy between the trial court and the defendant is the preferred evidence proving the defendant knowingly and voluntarily waived his rights by pleading guilty, it is not indispensable when the record contains other evidence of a proper waiver. State v. Nuccio, 454 So.2d 93 (La.1984); State v. Robair, 622 So.2d 829 (La.App. 4 Cir. 1993). The guilty plea form taken with the minute entry attesting to the defendant's Boykinization constitutes a valid waiver. State v. Tucker, 405 So.2d 506 (La.1981). Accordingly, the State produced sufficient evidence to establish the validity of the 1984 conviction.

Use of the 1984 conviction
At the multiple bill hearing, the defendant only challenged the sufficiency of the evidence to establish identity and validity of the convictions forming the basis for the multiple bill. However, in his fourth assignment of error the defendant now argues that one of the convictions, the 1984 conviction, should not have been used at all. Notwithstanding the failure to raise this specific legal argument at the multiple bill hearing, it should be noted that the defendant placed the State and the trial court on notice that the 1984 conviction was being challenged. Moreover, because the State has the burden of proving that the cleansing period has not expired, this court will address the issue of whether the court erred in using the 1984 conviction.
In this assignment of error the defendant questions whether the current ten-year cleansing period of La. R.S. 15:529.1(C) should have been applied to his 1984 conviction.
La. R.S. 15:529.1, provides in relevant part:
C. This Section shall not be applicable in cases where more than ten years have elapsed since the expiration of the maximum sentence or sentences of the previous conviction or convictions, or adjudication or adjudications of delinquency, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods. (emphasis added)
Pursuant to the express wording of this statute, the statute does not apply in cases where a cleansing period of ten years has elapsed since the expiration of the maximum sentence of previous convictions. Prior to 1994 this section provided for a five-year cleansing period. However, in 1994 the cleansing period was enlarged from five to seven years, and in 1995 the cleansing period was enlarged still further to ten years.
"The sequence necessary for enhancement of sentencing under the Habitual Offender Law is commission of crime, or crimes, followed by conviction (equals first offender), then commission of another crime, or crimes, followed by conviction (equals second offender), and so forth." State ex rel Mims v. Butler, 601 So.2d 649, 651, n. 4 (La.1992).
The defendant argues that at the time of the commission of the 1993 offense (the second predicate offense), the then existing five-year cleansing period for determining multiple offender status had already expired. Accordingly, he argues that he could not have been adjudicated a second felony offender. A review of the relevant dates concerning the convictions forming the basis for the multiple bill charging the defendant with being a third felony offender supports this contention. The relevant facts for each conviction can be found in the following chart:

*476
-------------------------------------------------------------------------------------------
CASE CHARGE DATE OF DATE OF SENTENCE RELEASE/
NO. OFFENSE CONVICTION DISCHARGE
 DATE
-------------------------------------------------------------------------------------------
299-642 14:95.1 (Felon 12/13/83 2/13/84 Three years hard labor Unknown
 in possession in the custody of DOC
 of a weapon)
361-273 14:67(B) (Felony 1/1/93 5/24/93 Eighteen months in the Unknown
 theft) custody of DOC
 suspendedeighteen
 months probation
402-100 14:34 9/5/98 3/10/99 Ten years in custody of Still
 (aggravated DOC incarcerated
 battery) Life imprisonment as a
 third felony offender

As noted in the above chart, no evidence was presented showing the defendant's discharge dates for the 1984 and 1993 convictions. This is relevant because the cleansing period begins to run from the date that the defendant is actually discharged from state custody and supervision. State v. Wheeler, 576 So.2d 541 (La. App. 4 Cir.1990), writs denied, 578 So.2d 140 and 580 So.2d 672.
However, assuming arguendo that the defendant served his entire three-year sentence for his 1984 conviction, the five-year cleansing period in existence at the time he committed his 1993 offense would have expired. Thus, he could not have been adjudicated a second felony offender at the time of the 1993 offense.
In State v. Rolen, 95-0347 (La.9/15/95), 662 So.2d 446, the Louisiana Supreme Court was faced with an expansion from 5 to 10 years of the cleansing period for the DWI multiple offender statute, R.S. 14:98(F). The defendant's first DWI conviction occurred in April 1985, when the law in effect was a 5-year cleansing period. In June 1993, the legislature amended the cleansing period to 10 years. Eight months later, in March 1994, the defendant committed a second DWI. Thus, more than five years elapsed between his first offense and the amendment that enlarged the cleansing period to 10 years; however, the second DWI offense occurred less than 10 years after Rolen's first DWI offense, while the 10 year period was in force.
Rolen challenged the application of the 10-year cleansing period to him as an unconstitutional ex post facto law. The Louisiana Supreme Court rejected the challenge, because the amended cleansing period did not disadvantage him in his reliance on the law. It did not increase the penalty for the first offense, the relevant offense was the current crime not the predicate offense, and the defendant could not legitimately have relied on a cleansing period that was subject to change and did change before his new crime. Of significance here is this statement by the Supreme Court:
At the time of his arrest on March 27, 1994, relator had been placed on notice by the state that the definition of "prior conviction" in La. R.S. 14:98 had changed and that he could no longer rely on the former five-year cleansing period to abate the collateral consequences of his prior D.W.I. offense for any future violation of the statute. The Ex Post Facto Clause required no more.
Rolen, at 449 (emphasis in original).
In other words, Rolen, a citizen, was put on notice of the expanded cleansing period *477 before he committed his second DWI offense. After the law changed, he was presumed to know that he would not be treated as a first offender if he committed a second DWI offense five years and a day after his first offense. He now had to wait 10 years and a day. Although Rolen received notice of the change in the law more than five years after the first offense, the notice was timely for him to conform his conduct when the cleansing period was expanded to 10 years.
In this case, Everett conformed his conduct to the then existing cleansing period. He waited more than five years before he committed his second felony offense. Everett's case is thus critically different from the defendant in Rolen. For, at the time he committed the second (the 1993) offense, Everett "had [not] been placed on notice by the state that [the cleansing period] had changed" and that "he could no longer rely on the five-year cleansing period to abate the collateral consequences of his prior [the 1983] offense for any future violation." In this case, "[t]he Ex Post Facto Clause required... more." Rolen, supra. In effect, Everett had complied with the Habitual Offender Law in effect at that time.
Under these facts, using an extended cleansing period, enacted after the prior offenses (i.e. ex post facto), to link said prior offenses would violate the ex post facto clause.
This assignment of error has merit.
CONCLUSION
The defendant's conviction for aggravated battery is affirmed. The defendant's adjudication as a third felony offender and his sentence are vacated, and remanded for resentencing as a second offender.
AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
NOTES
[1] 762 So.2d 11.
[2] Additionally, at trial the defendant admitted to being charged with possession of a firearm in 1983. He also admitted to pleading guilty and to being sentenced to serve three years in jail.
[3] These are the right to trial by a judge or jury, the right against self-incrimination, and the right to confront and cross-examine his accusers.