877 So.2d 177 (2004)
STATE of Louisiana, Appellee,
v.
Solomon MOORE, Appellant.
No. 38,355-KA.
Court of Appeal of Louisiana, Second Circuit.
June 23, 2004.
*179 Kenota P. Johnson, for Appellant.
Jerry L. Jones, District Attorney, Geary Aycock, Assistant District Attorney, for Appellee.
Before BROWN, WILLIAMS and CARAWAY, JJ.
WILLIAMS, J.
The defendant, Solomon Moore, was charged by bill of information with conspiracy to commit armed robbery, a violation of LSA-R.S. 14:64 and 14:26, attempted armed robbery, a violation of LSA-R.S. 14:64 and 14:27 and attempted second degree murder, a violation of LSA-R.S. 14:30.1 and 14:27. After a jury trial, the defendant was found not guilty of the conspiracy to commit armed robbery charge. He was found guilty as charged of attempted armed robbery and guilty of the responsive verdict of aggravated battery, a violation of LSA-R.S. 14:34. The trial court sentenced the defendant to serve 45 years at hard labor for the attempted armed robbery conviction and 10 years at hard labor for the aggravated battery conviction. The sentences were ordered to be served consecutively. The defendant appeals his convictions and sentences. We affirm.

FACTS
At approximately 9:00 p.m. on January 17, 2002, the defendant, Solomon Moore, telephoned Torwinshell Jackson, his ex-girlfriend, to pick him up at Earl Hargrove's home in West Monroe, Louisiana. Jackson was five and one-half months pregnant with the defendant's child. Because Jackson's mother did not approve of her dating the defendant, Jackson told her mother that she needed to borrow her van to return a video tape to a friend. Jackson used her mother's burgundy van and drove *180 to Earl Hargrove's home, where she picked up the defendant and two of his friends, Danny Hargrove and Luther Warren. The defendant then instructed Jackson to drive to Willie Ethridge's home to pick him up. When the group arrived at Ethridge's house, the defendant got out of the van and Ethridge met with him in the carport. After the defendant and Ethridge spoke for a few minutes, Hargrove and Warren got out of the van and joined them in the carport. Shortly thereafter, all four men returned to Jackson's van. The defendant was sitting in the front passenger seat of the van. The men asked Jackson to take them to the Economy Inn on DeSaird Street in Monroe. According to Jackson, Ethridge stated that they were going to rob or "jack" an individual whom he referred to as Poochy or Pookey.
When the group arrived at the Economy Inn, Ethridge got out of the van and knocked on the door. According to Jackson, Ethridge was supposed to determine whether Poochy or Pookey had any guns and money, however, no one answered the door. When Ethridge came back to the van, Jackson left the area and drove toward a set of apartments. Jackson testified that the defendant told her to stop the van because he recognized someone who owed him money. Jackson turned the van around in the driveway of the apartments and drove right behind a parked 1991 Caprice Classic. The victim, sixteen-year-old Michael Richard, was sitting in the driver's seat of the parked car. Jackson drove behind the car so that Richard could not move his vehicle out of the parking space. According to the victim's testimony at trial, he and two of his friends, Reginald Coleman and Marvin Perkins, had just entered the vehicle and were going to McDonalds to get something to eat. He testified that he saw the defendant get out of the front passenger side of the van. The defendant placed the hood of his black jacket on his head, went to Richard's vehicle and opened the driver's side door. The defendant put a gun to Richard's head and stated, "Break yourself." Initially, Richard pushed the gun out of his face; however, when he felt the gun, he realized that it was real and began to panic. Richard turned to his friends sitting in the vehicle and told them that the gun was real. Defendant then stepped back, removed the hood from his head and fired three shots into the car. As Richard crawled toward the passenger side of the vehicle, he was shot in the upper thigh area. Pellets from the bullets were lodged in both of Richard's thighs and could not be removed.
When she heard the gunshots, Jackson drove away in the van. However, Hargrove instructed her to stop so the defendant could get into the van. The defendant got into the van and the group drove back to West Monroe.[1] According to Jackson, when the defendant returned to the van, he stated, "I got that n ... r, I don't know if he was pulling his wallet or a gun." Jackson testified that she also saw the defendant give the gun to Warren. The victim later identified the defendant from a photographic line-up as the perpetrator of the crimes.

DISCUSSION
By his first assignment of error, the defendant contends the evidence was insufficient *181 to sustain his convictions. Specifically, he argues that the state failed to present sufficient evidence of his identity as the perpetrator of the crimes.
Although the record does not reflect that the defendant filed a motion for post-verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
The criterion for evaluating sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational fact-trier could find that the state proved all elements of the crimes beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Clower, 30,745 (La.App.2d Cir.06/24/98), 715 So.2d 101. That standard, initially enunciated in Jackson and now legislatively embodied within LSA-C.Cr.P. art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983); State v. Perry, 612 So.2d 986 (La.App. 2d Cir.1993).
It is always the function of the jury to assess the credibility of witnesses and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993). Where the trier of fact has made a rational determination, an appellate court should not disturb it. Indeed, in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for the requisite factual conclusion. State v. Clower, supra; State v. Thomas, supra; State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La.1975); State v. Maxie, 30,877 (La.App.2d Cir.8/19/98), 719 So.2d 104; State v. Dean, 528 So.2d 679 (La.App. 2d Cir.1988).
Under Jackson v. Virginia, supra, the state bears the burden of negating any reasonable probability of misidentification in cases where the defendant asserts he was not the perpetrator or he remains silent. State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520. However, positive identification by only one witness may be sufficient to support a defendant's conviction. State v. James, 33,262 (La.App.2d Cir.3/10/00), 754 So.2d 429; State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12; State v. Miller, 561 So.2d 892 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (La.1990).
In order to convict a defendant of attempted armed robbery, the state must prove that the defendant, having the specific intent to commit armed robbery, did or omitted an act for the purpose of and tending directly toward the taking of anything of value belonging to another, from the person of another or in the immediate control of another, by the use of force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64 and 27; State v. Young, 27,237 (La.App.2d Cir.8/23/95), 660 So.2d 548.
In order to convict the defendant of aggravated battery, the state must prove that the defendant intentionally used force or violence upon the victim, that the force or violence was inflicted with a dangerous *182 weapon and that the dangerous weapon was an instrumentality used in a manner likely or calculated to cause death or great bodily harm. State v. McGee, 37,919 (La.App.2d Cir.12/10/03), 862 So.2d 452.
During the trial, the victim testified that it is understood "on the street" that the term "break yourself" means to give up all of your money. Both Jackson and the victim placed the defendant at the scene of the crime and established that he actually shot the victim. Jackson testified that immediately after he entered the van the defendant stated that he had to shoot the victim. The victim knew the defendant by his nickname or alias, Bird. As stated previously, Jackson is the defendant's ex-girlfriend.
Based on the testimony presented at trial, the evidence was sufficient to prove beyond a reasonable doubt that the defendant was the perpetrator of the attempted armed robbery and aggravated battery. There was no reasonable possibility of misidentification in this case. This assignment of error lacks merit.
By the remaining five assignments of error, the defendant complains of the sentences imposed by the trial court. In challenging the sentences as excessive, the defendant argues that the record does not reflect the required articulation by the trial court for adherence to LSA-C.Cr.P. art. 894.1 and the trial court failed to give particular justification for the imposition of consecutive sentences for crimes arising out of the same conduct. He also questions the trial court's decision to impose the maximum sentence for each conviction.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982).
After a careful review of this record, we find that the trial court was very thorough during the sentencing hearing. The defendant's argument that the trial court failed to follow Article 894.1 is without merit. The trial court specifically stated:
In its sentencing deliberations the court has specifically charged itself with the relevant provisions of article 894.1 of the Louisiana Code of Criminal Procedure and has reviewed the contents and revelations of the pre-sentence investigative report, the entire case file and all submissions on behalf of the defendant.
The trial court recited the facts of the case and weighed the defendant's degree of involvement and any degree of cooperation with law enforcement and/or prosecution agencies. The trial court stated, "The court finds applicable article 894.1(A)(1)(2) and (3) and subsection (B)(1),(5),(6),(10),(18) and (19). The court's review of all other relevant factors contained in article 894.1 showed there to be no mitigating factors present whatsoever." Thus, contrary to defendant's assertions, we find that the trial court took cognizance of the criteria of Article 894.1 and articulated a factual basis for the sentences imposed.
*183 A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, we may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. Lingefelt, 38,038 (La.App.2d Cir.1/28/04), 865 So.2d 280. In addition, the trial court retains the discretion to impose consecutive sentences in cases in which the offender's past criminality or other circumstances in his background justify treating him as a grave risk to the safety of the community. State v. Walker, 00-3200 (La.10/12/01), 799 So.2d 461; State v. Feaster, 36,868 (La.App.2d Cir.3/5/03), 840 So.2d 675. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. State v. Green, 614 So.2d 758 (La.App. 2d Cir.1993).
The trial court noted that consecutive sentences for offenses arising out of the same transaction are "reserved only for those most egregious of offenses and offenders." In stating its reasons for requiring that the sentences be served consecutively, the court considered the defendant's criminal history, the gravity and viciousness of the offenses committed, and the fact that the defendant is an unusual risk of danger to the public. Based on this record, we find that there was a factual basis for the imposition of consecutive sentences.
A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). Here, the defendant is classified as a fourth felony offender. Several of his prior felony convictions were crimes against the person. He was out of jail on bond for two days when he committed the instant offenses and the offenses of kidnapping, armed robbery and attempted second degree murder against a pizza delivery person later in the same day. Considering the background of this defendant and his blatant disregard for human life, coupled with the facts of the instant case, the maximum sentences imposed by the trial court do not shock the sense of justice nor are the sentences the purposeless and needless infliction of pain and suffering. The sentences are not constitutionally excessive. The defendant's assignments of error lack merit.

CONCLUSION
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] A short while after committing the instant offense, the defendant, Hargrove, Ethridge and Warren, kidnapped a female Johnny's Pizza delivery driver, robbed her at gunpoint, shot her three times and left her for dead in a ditch in a rural part of West Monroe. The defendant was tried and convicted of attempted second degree murder, armed robbery and second degree kidnapping. This Court affirmed his convictions on appeal. State v. Moore, 37,935 (La.App.2d Cir.1/28/04), 865 So.2d 227.