887 So.2d 751 (2004)
STATE of Louisiana, Appellee,
v.
Melvin Lynn JOHNSON, Jr., Appellant.
No. 38,927-KA.
Court of Appeal of Louisiana, Second Circuit.
November 23, 2004.
*753 Kenota Pulliam Johnson, for Appellant.
Melvin Lynn Johnson, Jr., pro se.
Paul J. Carmouche, District Attorney, Laura O. Wingate, Ron C. Stamps, J. Thomas Butler, Assistant District Attorneys, for Appellee.
Before WILLIAMS, PEATROSS and MOORE, JJ.
WILLIAMS, Judge.
The defendant, Melvin Lynn Johnson, Jr., was charged by bill of information with armed robbery, a violation of LSA-R.S. 14:64. After a jury trial, the defendant was found guilty as charged. The trial court adjudicated defendant a third felony offender and imposed the mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence. *754 Defendant's motions for post-verdict judgment of acquittal, new trial and reconsideration of sentence were denied. Defendant appeals his conviction and adjudication as a third felony offender. We affirm the conviction. However, we set aside the habitual offender adjudication and remand.

FACTS
Shortly before 10:00 a.m. on December 31, 2002, the House of Brass, a clothing and jewelry store in Shreveport, was robbed by a masked individual who was carrying a shotgun and wearing dark clothing. Sherry Pollard, a store employee, testified that she was near the front of the store when she looked up and saw a person wearing a mask like the one used in the movie Scream. The individual pointed a shotgun at her face and told her to cooperate so that no one would get hurt. He then ordered Pollard and two other employees to face the wall. The robber demanded money and Pollard handed him an amount of approximately $180 to $190 from the cash register.
At that point, a female customer entered the store and the assailant ordered her to get down. When the customer hesitated, the assailant hit her with his elbow. The robber then told Pollard he wanted more money and she went to the cash register in another part of the store, but could not open the cash drawer. She ran toward the back of the store and left the building with three other employees. They ran next door to call 911. At trial, Pollard identified the mask and shotgun as items used during the robbery.
A co-worker, Beverly Martin, testified that when she heard the robber yelling, she ran to the back of the store and told another employee to call the police. Martin said Pollard, who had run to the back area, was hysterical and was concerned about getting more money for the robber to keep him from killing anyone. Martin said that she told the others they should leave and that the police were driving up as they went next door.
Stephanie Woods, the store manager, testified that she was in the accountant's office near the back of the store when she heard a male yelling and demanding money. Woods stated that the accountant called 911 and that they waited inside several minutes until the police arrived. Woods testified that the store opened every morning with $200 in the cash register.
Michael Greber, an officer with the Shreveport Police Department, testified that he and other officers arrived at the scene of the robbery within two to three minutes and set up a perimeter around the store. Acting on information from Detective Oster that the robber had just gone over the cinder block wall approximately 75 feet behind the store, Greber climbed to the top of the wall and looked over. He saw a black man lying on the ground wearing a black coat and holding a shotgun by his side. Greber stated that his gun was pointed at the suspect, who aimed the shotgun at him. Greber jumped down and shouted "gun" to warn the other officers.
Robert Rivet, the officer who apprehended the suspect, testified that he was walking to Albert Street to set a perimeter when he saw a man who matched the suspect's description run from between two houses. Officer Rivet pursued the fleeing suspect, who ran out of sight around the corner of a house. Rivet entered the yard of the residence, looked around and found the suspect lying on the ground near the house with his hands underneath him. Rivet pulled the suspect away from the house and observed a Scream mask and shotgun on the ground where the suspect had been hiding. Rivet identified the defendant in court as the *755 person taken into custody and testified that the mask and shotgun were those found on the ground.
Shreveport Police Officer Paul Vines testified that when he arrived, Rivet and another officer were trying to subdue the defendant. Officer Vines handcuffed defendant and conducted a pat-down search of his person. Vines stated that he found $188 in cash and a set of keys in defendant's coat pocket. Vines also saw a Scream mask and shotgun at the scene.
Tom Oster, a Shreveport Police investigator, was driving past the store when the robbery was reported. As he turned into the store's driveway several women came out of the building and ran past him to a business next door. He testified that another woman then ran out and told him that the armed robber wore a mask and was still inside. Oster stated that one of the officers around the building reported that the suspect was running out of the back door and that he was dressed in black and carried a shotgun.
Oster drove around to a church parking lot behind the store and saw that the area was enclosed by a cinder block wall. He noticed a car that was parked in the corner of the lot closest to the store. Oster testified he later learned that the car belonged to the defendant. Oster then saw a woman standing on the back porch of a nearby business. She mouthed the words "he's right there" and pointed to the other side of the wall. Oster said he stood on top of the car and looked over as two officers climbed the wall. They jumped down and one officer yelled that the suspect held a gun.
Oster watched as the suspect, a black male with braids in his hair, dressed in a long black coat and holding a gun, began running through a back yard toward Albert Avenue. Oster reported this information over his radio and within two minutes he heard officer Rivet respond that the suspect was in custody. Oster testified that the 911 call came in at 9:49 a.m. and the radio report that defendant was in custody was recorded at 9:58 a.m.
Oster stated that during the initial interview at the police station, the defendant was angry and upset and did not want to answer any questions. Oster testified that at a subsequent interview, defendant said that he had driven a friend to the area of the store and parked in the adjacent parking lot. Defendant told Oster that the friend was gone for several minutes and when he returned to the car, he handed defendant the shotgun, the mask and the money and changed clothes with the defendant before running away. Defendant stated that he ran when he heard the police sirens and refused to give the name of his friend. Defendant was charged with armed robbery.
A unanimous jury found the defendant guilty as charged. The trial court adjudicated defendant a third felony offender and imposed the mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence. Defendant's motions for post-verdict judgment of acquittal, new trial and reconsideration of sentence were denied. Defendant appeals his conviction and adjudication as a third felony offender.

DISCUSSION
The defendant contends the evidence was insufficient to sustain his conviction. Defendant argues that the state failed to prove his identity as the perpetrator since the store employees could not identify the defendant as the robber, no witness kept the robber continuously in view after he left the store and the state failed to conduct forensic tests on the *756 mask, gun and money to prove that defendant had touched those items.
The standard of review for sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. LSA-C.Cr.P. art. 821; Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Moore, 38,355 (La.App.2d Cir.6/23/04), 877 So.2d 177. Circumstantial evidence is defined as evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. State v. Austin, 399 So.2d 158 (La.1981). Flight and attempt to avoid capture are circumstances from which the trier may infer guilt. State v. Fuller, 418 So.2d 591 (La.1982).
In cases where the defendant asserts that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520. Credibility determinations are the province of the trier of fact. State v. Trosclair, 443 So.2d 1098 (La.1983), cert. dism., 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984); State v. Holland, 544 So.2d 461 (La.App. 2d Cir.1989), writ denied, 567 So.2d 93 (La.1990). In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support the requisite factual conclusion. State v. Moore, supra; State v. Emerick, 499 So.2d 195 (La.App. 2d Cir.1986); State v. Garlepied, 454 So.2d 1147 (La.App. 4th Cir.), writ denied, 462 So.2d 189 (La.1984).
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64. To convict this defendant of armed robbery, the state was required to prove that defendant was the person who took money from a worker at the House of Brass by use of force or intimidation while armed with a dangerous weapon. The state's case included testimony by witnesses from the store and police officers as well as physical evidence found with the defendant at the time of his arrest.
Sherry Pollard testified that the robber pointed a shotgun at her and wore a mask. She stated that the store cash register had contained $200 in bills and coins, that she handed the assailant only the bills and estimated that an amount between $180 and $190 was stolen. Pollard identified the mask and gun found with defendant as those she had seen during the robbery. Beverly Martin and Stephanie Woods, store employees who heard the robber make his demands, testified that the police were called while the robbery was in progress.
Officer Rivet stated that he pursued an individual who fit the description of the robbery suspect. Although Rivet briefly lost sight of the suspect when he ran around the corner of a house, upon entering the yard, Rivet immediately observed defendant lying on the ground in an apparent attempt to hide. After moving defendant, Rivet saw a mask and shotgun that were the same type as used by the assailant.
*757 Detective Oster testified that a period of nine minutes passed between receipt of the call reporting an armed robbery in progress and the arrest of defendant near the scene. Oster stated that in an interview, defendant said that on the day of the robbery he had dropped off a friend near the store and after a short time the friend returned to the car, handed defendant the shotgun, mask and money and fled.
In cases involving circumstantial evidence, the reviewing court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. Rather, the appellate court, evaluating the evidence in the light most favorable to the prosecution, determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994). Here, the jury could have found that the alternative hypothesis suggested by defendant was not reasonable under the circumstances of this case.
The jury weighed the credibility of the witnesses and evaluated the evidence. The jury heard that defendant was apprehended within nine minutes of the robbery in close proximity to the crime scene. He was dressed in the same type of clothing as that worn by the perpetrator and he was found in possession of a shotgun, a mask and $188, a sum of money consistent with the amount which was reported stolen.
Viewing the above evidence in the light most favorable to the prosecution, we conclude that the state negated any reasonable probability of misidentification and that any rational trier of fact could have found the essential elements of the crime of armed robbery proven beyond a reasonable doubt. Thus, the assignment of error lacks merit.
In his pro se brief, the defendant contends the trial court erred in allowing the prosecution to use false testimony at the preliminary examination. Defendant argues that the police investigator's incorrect testimony hindered his ability to prepare a defense.
The requirement that the evidence be viewed in the light most favorable to the prosecution obliges the reviewing court to defer to the trier of fact's rational credibility calls, evidence weighing and inference drawing. The appellate court should not assess credibility or re-weigh the evidence. State v. Marcantel, 00-1629 (La.4/3/02), 815 So.2d 50.
In the present case, the record shows that during the preliminary examination, Oster testified that the gun and mask allegedly seized from the defendant had been sent to the crime lab, but that the police had not yet received any results. In contrast, Oster testified at trial that the gun had not been dusted for fingerprints and the mask had never been sent to the crime lab. On cross-examination, Oster acknowledged that he previously had testified that the mask and gun had been sent to the crime lab.
Thus, the jury was aware of the prior inconsistent statement made by the police officer. In addition, the jury heard another officer testify that the mask and gun were found underneath the defendant's body at the time of his arrest. Based on the testimony presented, the jury was able to evaluate the likelihood that the gun and mask were in the defendant's possession and had been used by him and not by someone else.
Defendant also seems to contend that the existence of perjury can be shown *758 by a review of the police reports in the record. Defendant lists portions of police reports prepared by various officers to support his position. However, only two of the officers listed actually testified and defendant fails to show how their testimony differed from the statements in their police reports.
In his brief, defendant appears to argue that he has been denied due process because the evidence was not examined by the crime lab despite his requests to have the items tested after learning that Oster had wrongly stated that such testing would be done. However, defendant has not shown that the lack of testing prevented a fair trial and his argument does not support the assigned error that the prosecutor presented perjured testimony. To the contrary, nothing in the record indicates that a witness committed perjury either at the preliminary examination or the trial. The assignment of error lacks merit.
After the present case was submitted to this court for review, defendant filed pro se a supplemental assignment of error apparently alleging that the entire trial transcript was not included in the record. Upon review, we note that the record includes a transcript of the preliminary examination, the "free and voluntary" hearing, the jury voir dire, the trial, the multiple offender hearing and the sentencing. In his filing, defendant asserts that a number of witnesses testified but were not included in the trial transcript. However, the trial transcript in the record contains the testimony of all of the witnesses listed in the witness index and there is no indication of omitted pages.
After reviewing the entire record, we do not find any basis for the defendant's contention that the trial transcript was incomplete or that the appellate counsel did not represent him effectively in this matter. Thus, the assignment of error is meritless.

Habitual Offender Adjudication
The defendant contends the trial court erred in adjudicating him a third felony offender. Defendant argues that the documentation was insufficient to indicate that he knowingly and voluntarily pled guilty to the predicate offenses.
LSA-R.S. 15:529.1 provides in pertinent part:
A. (1) Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
...
(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
(I) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; or
(ii) If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(13), a sex offense as defined in R.S. 15:540 et seq. *759 when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
...
LSA-R.S. 14:2 provides in pertinent part:
(13) "Crime of violence" means an offense that has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon. The following enumerated offenses and attempts to commit any of them are included as "crimes of violence":
...
(w) Armed robbery
(x) First degree robbery
(y) Simple robbery
(z) Purse snatching
...
(kk) Aggravated robbery
In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court held that because a guilty plea constitutes a waiver of constitutional rights, including the privilege against self-incrimination, the right to trial by jury and the right to confront one's accusers, the prosecution is required to show that the plea was intelligent and voluntary. To use a prior guilty plea to enhance punishment, the state has the initial burden of showing that there was a conviction and that defendant was represented by counsel (or waived counsel) at the time he entered his plea. State v. Shelton, 621 So.2d 769 (La.1993). Once the state produces such proof, the burden shifts to the defendant to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Once defendant makes such a showing, the burden reverts to the state to prove the constitutionality of the plea. The state will meet its burden by introducing a "perfect" transcript of the plea colloquy, which shows that defendant was informed of and specifically waived the three Boykin rights. If the state introduces anything less than a "perfect" transcript, such as a guilty plea form or minute entry, the trial judge then must weigh the evidence submitted by the parties to determine whether the state has met its burden of proving that defendant's prior guilty plea was informed and voluntary and made with an articulated waiver of the three Boykin rights. State v. Carlos, 98-1366 (La.7/7/99), 738 So.2d 556; State v. Shelton, supra.
In the present case, the habitual offender bill of information states that defendant entered a guilty plea to robbery in March 1993 in Dallas County, Texas, and pled guilty to purse snatching in April 1990 in Caddo Parish. In opposition to the multi-offender bill, defendant asserts that the Caddo Parish conviction was defective since he was not advised that his plea could later be used to enhance the penalty in a subsequent conviction. He contends the Texas plea was defective because there was no certified copy of the minutes, the name listed was different from that of defendant and the court failed to inquire *760 into defendant's background, whether defendant was satisfied with counsel, or advise defendant of his right to compulsory process and right to appeal.
At the habitual offender hearing, the state offered documents from the Texas proceeding as exhibit one, including the plea agreement, minutes and defendant's fingerprints. Documents from the Caddo proceeding were introduced as exhibit two, including the bill of information, the minutes from the guilty plea hearing and the fingerprint page. These exhibits were admitted into evidence without objection.
The trial court accepted Shreveport Police Officer Van Zandt as a fingerprint expert over the objection of the defense counsel. Defendant's fingerprints were taken in court and entered into evidence as exhibit three. Officer Van Zandt testified that the defendant's fingerprints matched the prints from both the Texas and Caddo documents. Defense counsel cross-examined the officer regarding the quality of the Caddo Parish fingerprints.
The record shows that the Louisiana guilty plea conforms with the requirements of Boykin. The transcript of the taking of the plea shows that the trial court specifically addressed and the defendant waived the right to a jury trial, the right to confront witnesses and the right to remain silent.
However, the Texas guilty plea documentation is flawed. The Texas documents contained in the record include an undated plea agreement, a document titled "Judgment Adjudicating Guilt Referral to Magistrate" dated March 17, 1993, an undated bill of information for the charge of robbery and court minutes regarding adjudication of guilt and sentencing. The minutes do not have a date, defendant's name or a docket number.
The form-style plea judgment states that the defendant was present in court with his attorney and that he had specifically waived his right to trial by jury and his right to confront witnesses. The form, however, does not contain any reference to a waiver of defendant's right to remain silent. It references a waiver of rights form that the defendant purportedly had signed, but such a form is not included in the exhibit. It further references that the court found the defendant to be competent and that the guilty plea was being entered into freely and voluntarily.
The record shows that the documentary evidence submitted by the state at the habitual offender hearing satisfied its initial burden of proving the existence of the prior guilty pleas and that defendant was represented by counsel. However, because the judgment of conviction and other documents produced by the state omitted any mention of advice with respect to defendant's privilege against self-incrimination, the documentation is also sufficient to meet the defendant's burden to show a procedural defect in his guilty plea. Thus, the burden of proving the constitutionality of the plea shifted to the state. Even though the state did not produce a perfect transcript at the hearing, we note that defendant failed to specifically raise the lack of a self-incrimination waiver in his written opposition to the multi-offender bill of information. Because defendant did not point out the apparent defect in the Texas plea, the state was not given notice that it would be required to produce additional contemporaneous documentary evidence to support the voluntariness of the guilty plea.
Consequently, we must remand this case to the district court for the purpose of reopening the habitual offender hearing to provide the state with the opportunity to demonstrate the voluntariness of defendant's *761 guilty plea despite the apparent defect revealed by the documentary evidence which was introduced at the prior hearing. See State v. Townsend, 04-0005 (La.4/23/04), 874 So.2d 152.

CONCLUSION
For the foregoing reasons, the defendant's armed robbery conviction is affirmed. The adjudication as a third felony offender is set aside and the case is remanded to the district court for the purpose of reopening the habitual offender hearing to receive any available evidence regarding the voluntariness of defendant's guilty plea.
CONVICTION AFFIRMED; ADJUDICATION SET ASIDE AND REMANDED.