969 So.2d 804 (2007)
STATE of Louisiana, Appellee
v.
Alvin J. STEWARD, Appellant.
No. 42,643-KA.
Court of Appeal of Louisiana, Second Circuit.
November 14, 2007.
*806 Louisiana Appellate Project by Annette Roach, for Appellant.
Paul J. Carmouche, District Attorney, Lea Hall, John Ford McWilliams, Jr., Assistant District Attorneys, for Appellee.
Before STEWART, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
Defendant, Alvin J. Steward, was convicted by a jury of aggravated battery and was sentenced to five years of imprisonment at hard labor. Defendant now appeals. For the reasons stated herein, the conviction and sentence of Defendant are affirmed.

FACTS
On April 3, 2006, Defendant and Kimberly Jasmin, who was Defendant's live-in girlfriend at the time, went to wash some clothes at the home of Defendant's grandmother, Doris Jones (hereinafter referred to as "Doris"), which is located on Freddie Street in Shreveport. Defendant's father, Alvin Jones (hereinafter referred to as "Jones"), also lived at the residence. According to Ms. Jasmin, she and Defendant had been at the home approximately 20 to 30 minutes when a confrontation and/or argument began between Defendant and Jones. Defendant exited the house, followed by Jones, and retrieved a shotgun from the trunk of his and Ms. Jasmin's car. The two men stood "face to face" and continued arguing. Ms. Jasmin, who had gotten into the back seat of the car, heard the gun go off, but did not see the shooting because Defendant was standing between her and Jones. Jones was shot in the back of the middle part of his right leg. Defendant and Ms. Jasmin then left the scene in their car. Defendant was later arrested when police arrived at the home of Ms. Jasmin's mother, as he was attempting to flee the home through the back door. Ms. Jasmin's relationship with Defendant ended in August and Ms. Jasmin moved back into her mother's home at that time.
Defendant was subsequently charged by bill of information with aggravated battery, a violation of La. R.S. 14:34. At trial, Ms. Jasmin testified to the facts set forth hereinabove. In addition, Jones and Doris had related the circumstances of the incident to police officers on the evening the shooting occurred. At trial, however, Jones refused to admit that he gave a statement to police and was adamant in his testimony that the shooting was an accident. Jones asserted that he only told the police at the scene that he had been shot and did not want to press charges. When asked if the police interviewed him at the hospital, he emphatically responded that they did not. The district attorney impeached Jones with the substance of his statement contained in Officer Julian Anderson's narrative supplement of a police report in which the officer recorded that Jones had acknowledged that he and Defendant had had an argument about an hour prior to the shooting and that he had told Defendant "you know you can't whip me so what are you going to do, shoot me?" In his testimony, however, Jones maintained that he did not say what was contained in the report. He testified that he had shown Defendant a shotgun he had recently purchased and that Defendant put it in the trunk of his car to take it somewhere to try it out. Jones also testified *807 that the gun accidently went off when it hit the bumper as Defendant was taking it out of the trunk of the car. He further asserted that, after he had been shot in the leg, he directed Defendant to leave the scene.
Doris, Defendant's grandmother, testified that she was trying to sleep when she heard the gunshot. She admitted talking to officers on the evening of the shooting, but said she was in shock and "told the police something." When impeached with the substance of her statement contained in Officer Anderson's narrative supplement of the police report, Doris denied telling the officers that Defendant and Jones were arguing about a lawn mower when Defendant said he would kill Jones, then got a gun out of his vehicle and shot Jones in the leg.
Officer Anderson testified that he interviewed Doris at the scene and she stated that Defendant and Jones were arguing over a lawn mower. Doris said that Jones warned Defendant that he would be whipped if he did not stop being disrespectful in front of his grandmother. Defendant replied that if Jones did, he would kill him. According to Officer Anderson, Doris stated that Defendant then went to the vehicle, pulled out a shotgun and shot Jones. Officer Anderson further testified that, when he spoke with Jones at the scene, Jones said he had been shot in the leg by Defendant. Officer Anderson observed that Jones was in a lot of pain and was not able to give a full statement on the scene. Officer Anderson further identified the Winchester .12-gauge double-aught buckshot casing recovered from the scene.
Detective Lane Smith testified that he also interviewed Doris at the crime scene. Her account of what transpired was basically the same as that related by Officer Anderson. Detective Smith further testified that he spoke with Jones at the hospital, at which time Jones confirmed that he and Defendant had been arguing. Jones said that he approached Defendant, a statement was made that he could not whip him and Jones said, "So what are you going to do, shoot me?" At this point, Jones related to Detective Smith that he turned away and Defendant shot him in the leg. Nothing Jones said to Detective Smith on that evening indicated that the shooting was an accident. Within two weeks of Defendant's arrest, Detective Smith received a phone call from Jones, who strongly urged that he did not want to pursue the matter and did not want Defendant to go to jail over the shooting because it was accidental.
Defendant testified at trial, basically claiming that the shooting was an accident. He explained that his argument with Jones had ended earlier and the gun accidentally fired when he was handing Jones the gun. Defendant further testified that Jones directed him to leave, and he was not aware of the warrant for his arrest until a day or two prior to his arrest.
As previously stated, a six-person jury found Defendant guilty as charged. Defendant filed a motion for post-verdict judgment of acquittal, which was denied by the trial court, and Defendant was sentenced to serve five years of imprisonment at hard labor, with credit for time served. Defendant's timely-filed motion to reconsider sentence was denied by the trial court without a hearing. A motion for out-of-time appeal was granted.

DISCUSSION
Assignment of Error Number One (verbatim): The evidence introduced at the trial of this case when viewed under the Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard, was insufficient to prove all of the elements of the offense of aggravated battery beyond a reasonable doubt.
*808 Defendant admits that he shot Jones, but argues that the State failed to prove that he had the necessary criminal intent to support the conviction. The question of sufficiency of evidence is properly raised by a motion for post-verdict judgment of acquittal. State v. Howard, 31,807 (La. App.2d Cir.8/18/99), 746 So.2d 49, writ denied, 99-2960 (La.5/5/00), 760 So.2d 1190.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 02-2634 (La.9/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In order to convict a defendant of aggravated battery, the state must prove that the defendant intentionally used force or violence upon the victim, that the force or violence was inflicted with a dangerous weapon and that the dangerous weapon was an instrumentality used in a manner likely or calculated to cause death or great bodily harm. State v. Moore, 38,355 (La. App.2d Cir.6/23/04), 877 So.2d 177, writ denied, 04-2084 (La.1/7/05), 891 So.2d 670; State v. McGee, 37,919 (La.App.2d Cir.12/10/03), 862 So.2d 452.
An aggravated battery conviction requires proof of only general criminal intent or a showing that the defendant in the ordinary course of human experience must have adverted to prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2); State v. McGee, supra; State v. *809 Dunn, 30,560 (La.App.2d Cir.2/25/98), 709 So.2d 852. The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of this determination is to be guided by the standards of Jackson v. Virginia, supra. State v. McGee, supra, and cases cited therein.
As a threshold matter, we will first address Defendant's assertion that the trial court improperly overruled Defendant's objections to the use of the narrative supplement to the police report for impeachment purposes and that the fact finder improperly relied upon the statements in the report as substantive evidence of Defendant's guilt.
La. C.E. art. 607(D)(2) allows the introduction of a witness's prior inconsistent statement when offered solely to attack the credibility of the witness. Such prior inconsistent statements may not be used as substantive evidence of guilt. State v. Robert, 42,036 (La.App.2d Cir.5/9/07), 956 So.2d 750. In the case sub judice, the trial court properly stated this principle when overruling Defendant's objection to the use of the statements in the report. The court expressly limited the introduction of the evidence to impeachment purposes and instructed the jury accordingly. We are not persuaded by Defendant's argument that the State's case fails without substantive consideration of this impeachment evidence. Rather, as discussed below, we find sufficient evidence on this record to support Defendant's conviction without consideration of the statements of Jones and Doris in the police reports. Moreover, we agree with the State that the jury had the opportunity to observe Defendant's father and grandmother as witnesses and discern whether their familial relationship to Defendant may have colored their testimony.
After viewing the evidence contained in the instant record in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found all of the essential elements of the crime proven beyond a reasonable doubt. See Jackson v. Virginia, supra; State v. Tate, supra. That is, when the direct evidence, including the eyewitness testimony of Ms. Jasmin, is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence were sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime, including the requisite general criminal intent. See State v. Sutton, supra; State v. Owens, supra. As the State points out, Ms. Jasmin, who was not Defendant's girlfriend at the time of trial, was in the best position to tell her story as it really happened. Ms. Jasmin testified that Defendant and Jones began arguing shortly after she and Defendant arrived at Doris' home. She further testified that she exited the house with the two men and that they continued arguing once outside. According to her eyewitness account, Ms. Jasmin testified that the arguing continued as she sat down in the back seat of the car and Defendant retrieved the shot gun from the trunk. While she did not have a direct view of the actual shooting, she heard the gunshot. She testified that Defendant then got in the car and they left the scene.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 06-1083 (La.11/9/06), 941 So.2d 35; State v. Jones, 31,613 (La.App.2d Cir.4/1/99), 733 So.2d 127, writ denied, 99-1185 *810 (La.10/1/99), 748 So.2d 434; State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, supra. Likewise, a reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. See State v. Gilliam, supra. We find that the testimony of Ms. Jasmin is sufficient to support the conviction of Defendant.
This assignment is without merit.
Assignment of Error Number Two (verbatim): The five-year hard labor sentence imposed in this case is excessive and serves no useful purpose.
Aggravated battery is punishable by a fine of not more than five thousand dollars, imprisonment with or without hard labor for not more than ten years, or both. La. R.S. 14:34. As previously stated, Defendant was sentenced to serve five years of imprisonment at hard labor, with credit for time served.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show, as it does here, that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La.App.2d Cir.1/28/04), 865 So.2d 284, writs denied, 04-0834 (La.3/11/05), 896 So.2d 57 and 04-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App.2d Cir.4/22/04), 873 So.2d 747, writ denied, 04-2606 (La.6/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App. 2d Cir.3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.
Second, a sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La. App.2d Cir.4/2/97), 691 So.2d 864.
At sentencing, the trial court heard the testimony of Defendant's aunt. She basically testified that Defendant was respectful, but fearful, and his home life had been abusive. Defendant's aunt testified that she was unaware of his prior convictions. Before sentencing Defendant, the trial judge summarized the facts of the case and noted that Defendant's four prior *811 criminal convictions during a short amount of time were all anger related. The judge further noted Defendant's failure to participate in anger management training pursuant to a special condition of probation in connection with a prior criminal conviction. The trial judge stated that he considered all of the appropriate factors and considered this to be a very serious crime that could have had a deadly result. He further observed that the prior convictions and "event" show a pattern of great concern. The trial judge considered Defendant's young age as a mitigating factor.
This record supports the finding that the sentence of Defendant is not unconstitutionally excessive. When Defendant's crime and sentence are viewed in light of the harm done to society by violent crimes, his five-year hard labor sentence does not shock the sense of justice.
This assignment is, therefore, without merit.

CONCLUSION
For the foregoing reasons, the conviction and sentence of Defendant, Alvin J. Steward, are affirmed.
AFFIRMED.